UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GABRIELLE C.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

21-CV-00567-LJV
DECISION & ORDER

On April 30, 2021, the plaintiff, Gabrielle C. ("Gabrielle"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  Id.  On March 24, 2022, Gabrielle moved for judgment on the pleadings, Docket Item 7; on August 19, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on September 30, 2022, Gabrielle replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Gabrielle applied for Disability Insurance Benefits ("DIB"), and one category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. See 42 U.S.C. § 423(c); Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989). A qualified individual may receive both DIB and Supplemental Security Income ("SSI"), and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. See 20 C.F.R. § 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Gabrielle's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   ALLEGATIONS

Gabrielle argues that the ALJ erred in two ways.  *See* Docket Item 7-1 at 6-14.  First, she argues that the ALJ erred by not including all the limitations found by a consulting examiner, John Fkiaras, M.D., in her residual functional capacity ("RFC") determination.[4]  *Id.* at 6.  Second, she argues that the ALJ impermissibly relied upon his own lay opinion in crafting the RFC.  *Id.* at 10.  This Court disagrees and therefore affirms the Commissioner's finding of no disability.

### II.   ANALYSIS

#### A.   Dr. Fkiaras's Opinion

Gabrielle first argues that the ALJ erred by not including all the limitations found by Dr. Fkiaras in the RFC.  *See id.* at 6-10.  She reasons that because the ALJ found Dr. Fkiaras's opinion to be "generally persuasive," the ALJ needed either to incorporate

---

[4] A claimant's RFC "is [the most she] can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

3

all the limitations in that opinion into the RFC or explain why he did not incorporate them.  *Id.* at 6.  In the alternative, she argues that Dr. Fkiaras's opinion was "too vague to rely upon" because Dr. Fkiaras described her limitations as marked, moderate, or mild, and neither Dr. Fkiaras nor the ALJ defined the terms "marked," "moderate," or "mild."  *See id.* at 12-13.

Taking the second argument first, the regulations use the terms "mild," "moderate," "marked," and "extreme" to describe a claimant's degree of limitation in only *mental* work-related functioning.  *See* 20 C.F.R. § 404.1520a(c)(4).  But an opinion using these terms to describe a claimant's degree of limitation in *physical* work-related functioning is not so vague as to prevent an ALJ from using it in making the RFC determination.  *See, e.g.*, *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (opinions describing claimant's physical limitations as "moderate" consistent with RFC for light work).  Further, a "moderate" limitation in physical work-related functioning is consistent with "frequent, but not constant activity."  *See, e.g.*, *Danielle S. v. Comm'r of Soc. Sec.*, 516 F. Supp. 3d 286, 292 (W.D.N.Y. 2021) (internal quotation marks and citation omitted) (also collecting cases).  By extension, a "marked" limitation in physical work-related functioning is consistent with "occasional" activity.  *See Soc. Sec. Admin. Program Operations Manual Sys.* DI 25001.001.20 (Jan. 19, 2023).  So Dr. Fkiaras's opinion was not so vague that the ALJ could not use it in assessing Gabrielle's RFC.

Gabrielle also argues that Dr. Fkiaras's finding of "moderate limitations in standing" and "mild to moderate limitations in walking" are inconsistent with the ALJ's determination that she is capable of "perform[ing] light work [with] no more than

4

occasional postural activities."  Docket Item 7-1 at 9-10.  This Court disagrees for two reasons.

First, the RFC was in fact consistent with the limitations in Dr. Fkiaras's opinion.  Light work is defined as employment that requires "lifting no more than 20 pounds at a time" and "a good deal of walking or standing."  20 C.F.R. § 404.1567(b).  Courts in this circuit repeatedly have held that moderate limitations in walking, standing, or lifting are consistent with an RFC for light work.  See Rayshown M. v. Comm'r of Soc. Sec., 2022 WL 4298263, at *4 (W.D.N.Y. Sept. 19, 2022) (collecting cases); see also White v. Berryhill, 753 F. App'x 80, 82 (2d Cir. 2019) (holding that consultative physician's opinion that plaintiff had moderate limitations in standing, sitting, and performing "other activities" supported RFC for light work); Garcia v. Comm'r of Soc. Sec., 2022 WL 4234555, at *15 (S.D.N.Y. Sept. 14, 2022) (noting that "moderate limitations in, inter alia, standing, walking[,] and bending do not preclude performance of light work"); Gurney v. Colvin, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("[M]oderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work.").  So contrary to Gabrielle's argument, light work does not "conflict[]" with "moderate limitations in standing for extended periods and mild to moderate limitations in walking."  See Docket Item 7-1 at 10.

What is more, the RFC addressed the other limitations in Dr. Fkiaras's opinion as well.  For example, based on his examination, Dr. Fkiaras concluded that Gabrielle also had a "moderate to marked limitation for any repetitive heavy lifting, carrying, pushing, [or] pulling" and a "moderate limitation squatting [or] bending."  Id. at 451.  Consistent with those limitations, the ALJ found that Gabrielle could do only light work and that she

"can perform no more than occasional postural activities" such as "crouching, crawling, stooping, kneeling, balancing, and climbing stairs."  *Id.* at 32-36; *cf. Betty M. v. Comm'r of Soc. Sec.*, 2022 WL 4133238, at *4-5 (S.D.N.Y. Sept. 12, 2022) (opinion that claimant had a "moderate-to-marked limitation for repetitive heavy lifting, carrying, pushing, and pulling" and a "moderate limitation for repetitive squatting" supported RFC for light work with additional limitations for occasional postural activities).  In other words, the ALJ mirrored Dr. Fkiaras's "generally persuasive" opinion in the RFC.

And even if the RFC were not consistent with Dr. Fkiaras's opinion, that would not have been error.  Ultimately, it is the job of the ALJ to determine the claimant's RFC based on all the evidence.  *Troy F. v. Comm'r of Soc. Sec.*, 2023 WL 3645487, at *8 (W.D.N.Y. May 25, 2023) (citing *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017)).  As noted in the next section, the ALJ did just that.

### B.     Basis for the ALJ's RFC Finding

Gabrielle also argues that the ALJ relied on his own lay opinion to determine the RFC.  Docket Item 7-1 at 10.  More specifically, she argues that without Dr. Fkiaras's "vague" opinion, the ALJ could have relied only upon the opinions of "the non-examining state agency physicians" or his own lay judgment, neither of which constitutes substantial evidence.  *See id.* at 13.  But as just noted, contrary to Gabrielle's argument, *id.*, Dr. Fkiaras's opinion was not "too vague"; and contrary to Gabrielle's argument, there is other substantial evidence in the record supporting the RFC as well.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  The RFC need not

6

"perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 53, 56 (2d Cir. 2019).  As long as the ALJ considers all of the evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. § 404.1545; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis . . . regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Here, there was ample evidence in the record to support the ALJ's decision.  For example, and as discussed above, the ALJ tracked Dr. Fkiaras's opinion and crafted an RFC consistent with it.  *See* Docket Item 6 at 36.  Likewise, Gary Ehlert, M.D., noted that Gabrielle "reported nearly full [activities of daily living]" and opined that while she appears to have chronic back pain, that does not prevent her from performing those activities.  *Id.* at 453.  Those opinions and records alone would be enough substantial evidence to support the ALJ's finding.  *See Snyder v. Comm'r of Soc. Sec.*, 2023 WL 1943108, at *2-3 (2d Cir. Feb. 13, 2023) ("[M]edical records, medical opinions, and other opinion evidence . . . provide[] substantial support for the ALJ's conclusion.").

But in addition to that, the ALJ addressed the activities that Gabrielle performs in her day-to-day life.  Docket Item 6 at 35.  She reported that she can prepare meals and attend to her personal care.  *Id.* at 228.  She also reported that she grocery shops alone and is able to get to and from the grocery store either by walking or by taking public transit.  *Id.* at 229.  She said that she provides childcare four times a week.  *Id.* at 449.

And she said that she even exercises seven days a week and has lost 50 pounds doing so. *Id.* at 377. Moreover, and as the ALJ noted, Gabrielle has not sought extensive treatment for her alleged disability, which she said was "well managed with over the counter . . . medications." *Id.* at 35.

Gabrielle's hearing testimony lends further—and strong—support to the ALJ's conclusion. Gabrielle alleges that she was completely disabled from April 30, 2018, until May 1, 2019. *See* Docket Item 7-1 at 3. But she testified that on May 7, 2019—just 6 days after she was totally disabled—she was hired by UPS as a "free loader." Docket Item 6 at 52; *see id.* at 67. Gabrielle explained that her job involved loading packages weighing up to 80 pounds into "cages," *id.* at 67-68, and the vocational expert classified that job as "heavy" exertional labor, *id.* at 73. Gabrielle testified that she worked as a free loader for a year—until May 7, 2020, when she injured herself. *Id.* at 51-52.

Gabrielle also testified that there was no improvement in her condition between May 1, 2019, and May 7, 2019, that enabled her to begin that physically demanding job. *Id.* at 69. In other words, Gabrielle testified that she was able to load packages weighing up to 80 pounds when she was in the same condition as she was when she claimed to be disabled. And she said that she went back to work in May 2019 because she had a "financial need" to do so. *Id*. at 69-70. In his decision, the ALJ noted that Gabrielle's "ability . . . to successfully perform such work at the heavy exertional level immediately after the claimed closed period of disability, despite denying medical improvement, seriously undermin[ed] the allegations that she was unable to perform

8

work *at any exertional level* during the claimed closed period of disability." *Id.* at 35 (emphasis added).  And this Court agrees with that commonsense assessment.

In sum, the ALJ's RFC determination was based on Gabrielle's testimony, her objective treatment records, and the opinions of multiple medical professionals. *See id.* at 32-36.  That more than suffices as substantial evidence to support the ALJ's decision.

At its core, Gabrielle's argument is a disagreement with the ALJ's weighing of the evidence.  But it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Gabrielle] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the records as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence.  This Court will not second guess it.

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Gabrielle's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: August 14, 2023
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE